# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| ELHADJ ALPHA MAHMOUD SOUARE, | ) | CASE NO. 5:25-cv-1434 |
| | ) | |
| Plaintiff, | ) | |
| | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| vs. | ) | |
| | ) | |
| AKRON CHILDREN'S HOSPITAL, *et al*, | ) | |
| | ) | |
| Defendants. | ) | |

*Pro se* plaintiff Elhadj Alpha Mahmoud Souare ("Souare") filed this action under 42 U.S.C. §§ 1981 and 1983 against Akron Children's Hospital ("Akron Children's") and their employee Lori Williams ("Williams") (collectively, "defendants"). In his complaint, Souare claims that defendants denied his request to access his child's medical records. Souare asserts that this denial violated his due process and equal protection rights. He seeks monetary damages. (*See generally* Doc. No. 1 (Complaint).)

Defendants timely filed an answer to Souare's complaint. (Doc. No. 8.) Souare subsequently filed a document styled "Plaintiff's Opposition to Defendants' Motion to Dismiss" (Doc. No. 9) despite the fact that no motion to dismiss was pending. Given his *pro se* status, the Court has reviewed and considered this unauthorized filing.

For the reasons that follow, the Court concludes that Souare's allegations fail to invoke the

Court's subject matter jurisdiction. Pursuant to *Apple v. Glenn*, Souare's complaint warrants *sua sponte* dismissal.

I.   **BACKGROUND**

Souare provides very few factual allegations in his pleading. He indicates that he is the biological father of a minor child. (Doc. No. 1 ¶ 16.) He further avers that a child protection hearing was scheduled for July 9, 2025. (*Id*. ¶ 2.) "[O]n or about July 8, 2025," Souare contacted Akron Children's and requested access to the child's "ER X-ray, radiology report, and doctor's note" to prepare for his child protection hearing. (Doc. No. 1 ¶ 2; Doc. No. 9, at 2.) [1] Akron Children's, through Williams, denied the request. (Doc. No. 9, at 2.) Souare recounts that Williams denied him because "[he was] not married and in the state of Ohio the mother is the legal guardian" and that he would need to have a court order to receive the records. (*Id.*) Souare contends that this denial was improper as his parental rights had not yet been terminated as of July 8, 2025. (*Id.*) Not only does Souare allege that the denial was improper, but he also asserts it was a violation of his constitutional rights. (Doc. No. 1 ¶¶ 12–19.)

Souare claims that defendants engaged in an equal protection violation because he was treated differently than similarly situated parents based on his race, ethnicity, and/or cultural background. (*Id*. ¶¶ 16–18.) Without specificity, Souare claims that Akron Children's "regularly grants [child medical record access] to white fathers." (Doc. No. 9, at 3.) Souare further claims that his allegations are supported by generalized "national statistics" showing that "Black noncustodial parents face harsher treatment in family courts, and Black caregivers are less likely

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the electronic filing system.

to be granted access to children's medical records."[2] (*Id.*)

Souare also alleges that defendants violated his due process rights. (Doc. No. 1 ¶¶ 12–14.) He states that the actions of defendants "lacked justification and directly deprived Plaintiff of his constitutionally protected [substantive due process parental rights]." (Doc. No. 9-2, at 2–3.) In addition, he raises a procedural due process challenge asserting that "[defendants] failed to provide Plaintiff with notice, an opportunity to be heard, or a neutral tribunal . . . depriv[ing] Plaintiff of the fair process required before fundamental rights can be curtailed." (*Id.* at 3.)

Souare claims he has suffered concrete harm, stating that defendants' denial deprived him of the ability to present "critical evidence" at his child protection hearing. (Doc. No. 9, at 3.) Souare states that he has been in counseling "to address stress, anxiety, humiliation, and emotional harm directly caused by [defendants'] denial." (*Id.*) Souare seeks compensatory, non-economic, and punitive damages totaling $7,000,000. (Doc. No. 1, at 2.) Souare also requests attorneys' fees and costs, despite the fact that he is filing *pro se*. (*See id.*)

## II.     STANDARD OF REVIEW

*Pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365, 102 S. Ct. 700, 70 L. Ed. 2d 551 (1982) (per curiam), but the lenient treatment generally accorded *pro se* pleadings "has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). To avoid dismissal, even *pro se* complaints must meet basic federal pleading requirements and set forth allegations sufficient to state a plausible claim for relief. *See Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (citations omitted).

---

[2] Despite claiming to do so, Souare does not actually cite to any statistics or data supporting this assertion.

Because district courts have limited jurisdiction, a district court may *sua sponte* dismiss a complaint at any time pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction "when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479–480 (6th Cir. 1999) (finding plaintiff's claims lacked "the legal plausibility necessary to invoke federal subject matter jurisdiction" (citing *Hagans v. Lavine*, 415 U.S. 528, 536–37, 94 S. Ct. 1372, 39 L. Ed. 2d 577 (1974))). Faced with such a pleading, the district court may dismiss a fee-paid complaint and "need not afford the plaintiff an opportunity to amend[.]" *Forbush v. Zaleski*, 20 F. App'x 481, 482 (6th Cir. 2001) (upholding *sua sponte* dismissal of a complaint under *Apple v. Glenn* because the named defendant, a state court judge, was entitled to absolute judicial immunity (citing *Hagans*, 415 U.S. at 536–37)); *see also Zareck v. Corr. Corp. of Am.*, 809 F. App'x 303, 305 (6th Cir. 2020) (recognizing *sua sponte* dismissal is appropriate where a plaintiff's claims "present no Article III case because there is no room for the inference that the question[s] sought to be raised can be the subject of controversy" (citation omitted)).

### III.  DISCUSSION

Souare's complaint purports to bring causes of action under 42 U.S.C. §§ 1983 and 1981. (Doc. No. 1 ¶¶ 12–19.) For the reasons set forth below, Souare's complaint warrants *sua sponte* dismissal under *Apple v. Glenn* because its allegations are "devoid of merit" and fundamentally insufficient to invoke the Court's subject matter jurisdiction. 183 F.3d at 479; *see Hagans*, 415 U.S. at 536–37 (finding that frivolous, attenuated, or unsubstantial claims divest the district court of jurisdiction under Fed. R. Civ. P. 12(b)(1)) (collecting cases); *see also Hall v. Creech*, 17 F. App'x 270, 271 (6th Cir. 2001) (affirming dismissal under *Apple* in part because plaintiffs did not

state a viable constitutional claim). Even if the Court were to grant Souare the opportunity to amend his complaint, there is no set of facts that would give rise to federal jurisdiction under either § 1983 or § 1981.

### A. Plaintiff's § 1983 Claim

Souare's first claim is that "Defendants' refusal to provide medical records violated Plaintiff's right to due process and to meaningful parental involvement in his child's welfare" in violation of 42 U.S.C. § 1983. (Doc. No. 1 ¶¶ 12–14.) Souare also alleges that the hospital engaged in unlawful racial discrimination in violation of the Equal Protection Clause. (*Id.* ¶ 18.)

To establish a *prima facie* case under 42 U.S.C. § 1983, a plaintiff must assert that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988) (quoting *United States v. Classic,* 313 U.S. 299, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941)). Generally, to be considered to have acted "under color of state law" the person must be a state or local government official or employee. *Vos v. Cordray*, 719 F. Supp. 2d 832, 838 (N.D. Ohio 2010).

Here, Souare alleges that defendants' violation of his constitutional rights gives rise to a cognizable § 1983 claim. Souare, however, has failed to demonstrate how Akron Children's or Williams have acted under color of state law. Souare solely provides conclusory statements that defendants were acting under color of state law at the time of the alleged violation. (Doc. No. 1 ¶

5

17.) But the Court need not accept Souare's conclusory statements of law as true when determining whether he has stated a viable claim under § 1983. *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).

Souare has not pleaded any facts demonstrating that defendants are public entities. Nor can he. Akron Children's is a non-government not-for-profit hospital.[3] Williams, as an employee of Akron Children's, is not a public employee. These essential facts would remain unchanged even if Souare were granted an opportunity to amend his complaint. There is no conceivable manner in which Souare can overcome these facts to prove that defendants are public entities.

Nevertheless, in limited circumstances, a private party's actions may constitute state action under § 1983 where those actions may be "fairly attributable to the state." *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003) (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 947, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982)). "The Supreme Court has developed three tests for determining the existence of state action in a particular case: (1) the public function test, (2) the state compulsion test, and (3) the symbiotic relationship or nexus test." *Id.* (citing *Wolotsky v. Huhn,* 960 F.2d 1331, 1335 (6th Cir.1992)). None of these tests warrant finding state action here.

"The public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state, such as holding elections . . . or eminent domain." *Wolotsky* 960 F.2d at 1335 (citations omitted). This test has been interpreted narrowly. *Chapman*,

---

[3] In accordance with Fed. R. Evid. 201, the Court takes judicial notice that Akron Children's is a non-government not-for-profit hospital because it is "generally known within the trial court's territorial jurisdiction" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Courts routinely take judicial notice of information contained on federal and governmental websites. *Broom v. Shoop*, 963 F.3d 500, 509 (6th Cir. 2020) (citing *United States v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017)). The Ohio government website identifies Akron Children's as a non-government not-for-profit hospital. *See* OHIO.GOV, DIRECTORY OF REGISTERED HOSPITALS, https://publicapps.odh.ohio.gov/EID/output/20230211-032326.pdf (last visited Sept. 9, 2025).

6

319 F.3d at 833. "Under this 'relatively stiff test,' few areas are deemed exclusive state action (e.g. elections, eminent domain), and many other actions—even those that involve extensive government regulation—do not suffice to establish state action (e.g. insurance, education, workers' compensation, or electrical utilities)." *Marie v. Am. Red Cross*, 771 F.3d 344, 362–63 (6th Cir. 2014) (citations omitted).

Next, "[t]he state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Wolotsky* 960 F.2d at 1335 (citations omitted). "More than mere approval or acquiescence in the initiatives of the private party is necessary to hold the state responsible for those initiatives." *Id.* (citing *Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S. Ct. 2777, 73 L. Ed. 2d 534 (1982)).

Lastly, the symbiotic relationship test (also referred to as the nexus test) requires a showing that "there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Id.* (citations omitted). "Merely because a business is subject to state regulation does not by itself convert its action into state action . . . . Rather, it must be demonstrated that the state is intimately involved in the challenged private conduct in order for that conduct to be attributed to the state for purposes of section 1983." *Id.* (citations omitted).

Under any of these tests, Souare fails to plead sufficient facts demonstrating that defendants' conduct is fairly attributable to the state. Nor can he plausibly do so. The provision or denial of medical record access is not considered a power that is traditionally reserved to the state, particularly in light of how narrow the public function test has been construed. *See Marie*, 771

7

F.3d at 362–63. Likewise, Souare cannot plausibly allege that the state exerts coercive power over defendants. The state was not involved in overseeing Williams's decision to deny medical record access to Souare nor exerted sufficient intimate involvement in defendants' alleged conduct for it to be attributed to the state. The denial was instead an exercise of defendants' own independent judgment, supporting a finding of no state action. *See Probst v. Cent. Ohio Youth Ctr.*, 511 F. Supp. 2d 862, 867 (S.D. Ohio 2007) (concluding that the defendant was not a state actor because the action at issue was based on independent decision-making without state coercion or input). Finally, there is nothing Souare can allege to plausibly establish a sufficiently close nexus between the state, defendants, and defendants' conduct to establish state action. The most Souare could possibly assert is that Akron Children's is highly regulated by the state given that it is a healthcare provider. But "it is . . . well-established that state regulation, even when extensive, is not sufficient to justify a finding of a close nexus between the state and the regulated entity." *Lansing v. City of Memphis*, 202 F.3d 821, 830 (6th Cir. 2000) (collecting cases); *see also Crowder v. Conlan*, 740 F.2d 447, 451 (6th Cir. 1984) (holding that even extensive state regulation of a private hospital is not enough to support a finding of state action).

      Because Souare is unable to demonstrate that defendants acted under the color of state law, he has failed to meet the requirements to bring a § 1983 claim. *See Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) ("To prove a claim under 42 U.S.C. § 1983, a plaintiff must establish . . . that he was subjected to or caused to be subjected to [a constitutional deprivation] by a person acting under color of state law." (citing *Flagg Bros. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 56 L. Ed. 2d 185 (1978))). This absence of a state actor is fatal to his claim. Consequently, his § 1983 claim is "implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open

to discussion" such that Souare's § 1983 action has failed to invoke the Court's subject matter jurisdiction. *See Apple*, 183 F.3d at 479.

### B. Plaintiff's § 1981 Claim

Souare also attempts to bring a claim under 42 U.S.C. § 1981 alleging that "Defendants, including Lori Williams acting under color of law and/or under the authority of the hospital, intentionally treated Plaintiff differently than other similarly situated parents, denying access based on race, ethnicity, and/or cultural background." (Doc. No. 1 ¶¶ 15–19.)

Section 1981 prohibits race discrimination in the making and enforcing of contracts involving both public and private actors. *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609, 107 S. Ct. 2022, 95 L.Ed.2d 582 (1987). But § 1981 finds no application here because there is no making or enforcement of a contract. "Any claim brought under § 1981 . . . must initially identify an impaired 'contractual relationship,' § 1981(b), under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476, 126 S. Ct. 1246, 163 L. Ed. 2d 1069 (2006). In his complaint, Souare makes no mention of any impaired contractual relationship, nor does he plead any facts that could give rise a contractual relationship. For that reason alone, his § 1981 claim fails as a matter of law.[4] And, as was the case with his § 1983 claim, amendment would be futile as it would be unable to change the underlying facts that are fatal to his allegations.

---

[4] Even if Souare were permitted to amend his complaint to overcome this fault (which he cannot), his claim would still be deficient for other reasons. For instance, a § 1981 plaintiff must provide a sufficient factual basis proving discrimination. *See HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 613 (6th Cir. 2012) ("A complaint that includes only conclusory allegations of discriminatory intent without supporting factual allegations does not sufficiently show entitlement to relief."); *Han v. Univ. of Dayton*, 541 F. App'x 622, 626 (6th Cir. 2013) ("[A]lthough Plaintiff's complaint need not present detailed factual allegations, it must allege sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference that Defendants discriminated against Plaintiff with respect to his [protected class]." (internal quotations omitted)). Souare's claim relies solely on conclusory statements, even when supplemented by his additional unauthorized filing (Doc. No. 9), that are insufficient to establish a *prima facie* § 1981 claim.

Souare has failed to plead the existence of an impaired contract, and the facts he has pleaded foreclose the possibility of a contractual relationship. This shortcoming is so detrimental to Souare's § 1981 claim that the Court concludes that it is "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion" and, like his § 1983 claim, is insufficient to invoke the Court's subject matter jurisdiction. *See Apple*, 183 F.3d at 479.

## IV. CONCLUSION

As set forth above, the Court has concluded that Souare's claims are deficient to the point that they fail to invoke the Court's subject matter jurisdiction. *See Apple*, 183 F.3d at 479. Amendment of the pleadings cannot change the objective facts that are fatal to his claims. Because the Court lacks subject matter jurisdiction, Souare's complaint must be dismissed *sua sponte* pursuant to Fed. R. Civ. P. 12(b)(1). To the extent Souare has any viable state claims against defendants, those claims do not fall under the Court's federal jurisdiction and instead belong in state court. For all the foregoing reasons, this action is dismissed. Pursuant to 28 U.S.C. § 1915(a)(3), an appeal from this decision could not be taken in good faith.

**IT IS SO ORDERED**.

Dated: September 22, 2025

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　**HONORABLE SARA LIOI**
　　　　　　　　　　　　　　　　　　**CHIEF JUDGE**
　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT COURT**